UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-10299-WLH-SK | Date | November 10, 2025 |
|---|---|---|---|
| Title | *German Espinoza Maximo v. Fereti Semaia et al* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|
| Holidae Crawford | None |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:   (IN CHAMBERS) ORDER RE EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [5]**

The Court is in receipt of Petitioner German Espinoza Maximo's *Ex Parte* Application for Temporary Restraining Order (the "Application"). (Dkt. No. 5). On November 4, 2025, the Court issued an order preventing Petitioner from being removed from the Central District of California, pending resolution of the Application. (Order, Dkt. No. 6). Respondents have opposed the Application. (Opp'n, Dkt. No. 7). For the reasons explained herein, the Court **GRANTS** the Application and **ENJOINS** Respondents from continuing to detain Petitioner unless he is provided with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order.

## I.   BACKGROUND

The below factual background is taken from the allegations in the Petitioner's Petition for Writ of Habeas Corpus and TRO Application. (*See* Petition, Dkt. No. 1; Application). Except as noted, Respondents do not dispute these factual allegations at this stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

For more than twenty-five years, Petitioner German Espinoza Maximo, a father of three U.S.-born children, has resided in the United States. (Petition ¶ 1). On the morning of September 28, 2025, Mr. Maximo was arrested in a Los Angeles Home Depot parking lot by Border Patrol Agent Aaron Padda as part of "Operation At Large"—an immigration enforcement sweep. (*Id.* ¶ 21; Ex. B ("Maximo I-213")). At the time of his arrest, Mr. Maximo had neither a criminal record nor prior immigration history. (Maximo I-213 at 4-5). He was subsequently served with a Notice to Appear, commencing the removal process under the Immigration and Nationality Act ("INA"). (*Id.*, Ex. C ("NTA")).

On October 10, 2025, Mr. Maximo's counsel filed a Motion for Bond Determination pursuant to INA § 236(a), outlining his long history of familial and community ties to the Los Angeles region. (*Id.* ¶ 26; *see generally* Ex. C). Prior to that request, the Board of Immigration Appeals ("BIA") issued its decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025), in which it found that an Immigration Judge ("IJ") lacks the "authority to hear a bond request filed by an applicant for admission" under 8 U.S.C. § 1225(b), because the noncitizen is an "applicant for admission" as someone "present in the U.S. without admission" and thus subject to "mandatory detention." *See Matter of Hurtado* at 220-24. BIA decisions are binding on IJs. 8 C.F.R § 1003.1(g).

In accordance with the decision in *Matter of Hurtado*, on October 22, 2025, the IJ denied the motion for lack of jurisdiction. (Application at 6). Forty days since his initial arrest, Petitioner remains in custody.

On October 27, 2025, Petitioner filed a Petition for Writ of Habeas Corpus against Respondents. (*See generally* Petition). Petitioner alleged their deprivation of a bond hearing constitutes a violation of (1) 8 U.S.C. § 1226(a) of the INA, (2) the Fifth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Amendment's Due Process Clause, and (3) the Administrative Procedure Act. (*See id.* ¶¶ 63-94).

## II. DISCUSSION

### A. Legal Standard

A TRO may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In determining whether to issue a TRO, courts apply the four Winter factors (the "*Winter* Factors"), which also guide the evaluation of a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical").

If the Court issues a TRO, it must also issue an order to show cause why a preliminary injunction should not issue. L.R. 65-1.

### B. Analysis

ICE's recent policy of denying noncitizen residents like Petitioner bond hearings to which they are entitled under the INA has resulted in the granting of numerous TROs like the one Petitioner seeks here. *See, e.g., Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 2670875 (C.D. Cal. July 28, 2025); *Yarleque v. Noem*, No. 5:25-CV-02836-MEMF-SP, 2025 WL 3043936 (C.D. Cal. Oct. 31, 2025). After considering the position of Respondents—in what they concede was a copy-and-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

paste exercise of its arguments in other proceedings[1]—this Court joins the chorus of federal judges in (1) finding jurisdiction over Petitioner's claims, and (2) enjoining Respondents from its continued denial of Petitioner's bond hearing—an act that is likely a violation of federal law and the basic principles of due process.

1. *The Court Has Jurisdiction Over Petitioner's Habeas Petition*

Respondents argue that 8 U.S.C. §§ 1252(b)(9) and (g) of the INA deprive the Court of jurisdiction over Petitioner's claims. (Opp'n at 6-7).

First, Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).

In advocating that this section bars this Court's jurisdiction over Petitioner's claims, Respondents contend Section 1252(b)(9) is a funneling mechanism that "'channels judicial review of all [claims arising from deportation proceedings]' to a court of appeals in the first instance." (Opp'n at 7). Further, because Petitioner allegedly challenges a detention decision resulting from the government's "commencement" of proceedings, Respondents argue that the Court of Appeals—not this Court—is the appropriate avenue for seeking judicial review. (*Id.* at 8-9). And when combined with

---

[1] *See* Opp'n at 1 ("The government reiterates here the legal position it has taken in its opposition to the *ex parte* TRO application filed in the *Bautista* case, 5:25-cv-01873-SSS-BFM, which the government filed on July 24, 2025 as Docket no. 8.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

8 U.S.C. § 1252(a)(5)[2], Respondents additionally claim that this statutory framework requires any issue (legal or factual) arising from any removal-related activity to be reviewed only through the petition-for-review process. (*Id.* at 8). Respondents also rely on the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018) for this purported rule of law that Petitioner's claims are within the scope of section 1252(b)(9) since Petitioner "challenge[s] the government's decision to detain him in the first place." (*Id.* at 9-10).

The Court, like its colleagues, finds these arguments unavailing. Sections 1252(a)(5) and (b)(9) were intended to "channel judicial review over *final orders of removal* to the courts of appeals," and not to "foreclose all judicial review of agency actions." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added). These provisions do not serve to "bar claims that are 'independent of or collateral to the removal process.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *9 (9th Cir. Aug. 27, 2025), at *9 (quoting *J.E.F.M.*, 837 F.3d at 1032)).

Respondents' citation to *Jennings* is similarly misconstrued, as that opinion does not limit a district court's jurisdiction over claims like Petitioner's. In *Jennings* the Supreme Court specifically determined that the "arising from" language of section 1252(b)(9) should not be interpreted so expansively as to include any action that

---

[2] Section 1252(a)(5) provides: "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter*, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory)." 8 U.S.C. § 1252(a)(5) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

technically follows the commencement of removal proceedings, because that would bar judicial review of questions of law and fact that are *unrelated* to the removal proceeding until a final order of removal was issued. *Jennings*, 583 U.S. at 292-95. Petitioner here is "not asking for review of an order of removal; [he is] not challenging the decision to detain [him] in the first place or to seek removal; and [he is] not even challenging any part of the process by which their removability will be determined." *Id.* at 294. Rather, Petitioner seeks the specific remedy of an individualized bond hearing pursuant to § 1226(a). (Application at 21). The Court does not interpret the Application to challenge the propriety of Petitioner's removal generally. Accordingly, the Court finds that § 1252(b)(9) does not present a jurisdictional bar. *See Jennings*, 583 U.S. at 294–95.

Next, Respondents rely on Section 1252(g), which provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter*.

8 U.S.C. § 1252(g) (emphasis added).

In the alternative, Respondents argue that Section 1252(g) bars judicial review of Petitioner's claims because they concern (1) "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] *commence proceedings*," and/or (2) the "method" chosen by the Department of Homeland Security to commence removal proceedings. (Opp'n at 6). Here, however, Petitioner does not dispute that removal proceedings are in motion with the Notice to Appear issued to him on September 8, 2025. (*See* Application at 5-6). Instead, he disputes Respondents' denial of a bond hearing as required by federal statute. The Supreme Court itself clarified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

in *Jennings* that courts should not "interpret [section 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings*, 583 U.S. at 294. Rather, the language should be read to "refer to just those three specific actions themselves." *Id.*; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (narrowly construing Section 1252(g) to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'").

Respondents' citation to Judge Snyder's order in *Valencia-Mejia v. United States* is similarly unpersuasive. The facts of that case concerned a challenge to the denial of a noncitizen's request for involuntary departure, and the subsequent issuance of a Notice to Appear before an Immigration Judge—a specific method by which proceedings *commenced* as contemplated by Section 1252(g). *See Valencia-Mejia v. United States*, No. CV 08-2943 CAS PJWX, 2008 WL 4286979, at *4 (C.D. Cal. Sept. 15, 2008).

Because Petitioner's *bond denial* claims do not challenge any decision to commence proceedings, adjudicate cases or execute removal orders, the Court finds that section 1252(g) is not a bar to judicial review.

    2.    *The Winter Factors Support Granting Petitioner's Ex Parte Application for TRO*

Having established this Court's jurisdiction over Petitioner's claims, the Court now turns to the *Winters* factors to determine whether a TRO should issue. Without this Court's intervention, Petitioner asserts he "will remain in unlawful custody—detained under a statutory regime that does not apply to him and without any bond hearing—in violation of the INA and the Due Process Clause." (Application at 8). With each additional day of confinement, Petitioner claims he endures irreparable harm. (*Id.* at 9). Respondents primarily argue that a narrower provision of the INA (Section 1126(a))

**CIVIL MINUTES - GENERAL**

should control here, and therefore Petitioner is not entitled to a bond hearing. (*See* Opp'n at 10-13). The Court agrees with Petitioner that his continued detention warrants emergency injunctive relief.

*Likelihood of success on the merits.* Petitioner contends that he is likely to succeed on his statutory claim under the INA, as his detention should be governed by 8 U.S.C. § 1226(a)—not § 1225(b). (Application at 10). Respondents disagree, arguing that § 1225, the narrower provision of the two at issue, should govern. (Opp'n at 10). From their perspective, because Petitioner falls within the category of "applicants for admission" as he is an "alien[] present in the United States," § 1225's "specific detention authority" trumps the "general authority" found in § 1226(a). (*Id.*).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and
(2) may release the alien on—

    (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . .

8 U.S.C. § 1226(a).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 1236.1(d)(1)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including . . . an initial bond hearing before a neutral decisionmaker."). Contrast this with Section 1225(b)(2),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding]." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

The Court finds that Petitioner is likely to succeed on the merits of his bond denial claim, as he should be subject to Section 1226(a)'s discretionary detention scheme. The Ninth Circuit has made clear that "§ 1226(a) stands out from the other immigration detention provisions in key respects" partly because it provides "extensive procedural protections that are unavailable under other detention provisions." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Most importantly, the statute grants "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.*

Respondents stress that "an irreconcilable conflict in two legal provisions" exists, so the specific provision must govern over the general. (Opp'n at 10 (citing *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015 (9th Cir. 2017)). But the Court finds no conflict to exist here, much less an irreconcilable one; each provision governs a unique set of noncitizens—one for those residing in the United States and another for those seeking entry into the United States. *See Jennings*, 583 U.S. at 281, 297 (noting that section 1226 applies to "certain aliens already in the country," while section 1125(b) "applies primarily to aliens seeking entry into the United States") (emphasis added).

The Court accordingly finds Petitioner entitled to these protections as a noncitizen residing in the United States. (*See* Application at 3 ("Petitioner German Espinoza Maximo has lived and worked in this country for more than twenty-five years."). This finding is in harmony with all of the district courts within this Circuit to address the issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.").

***Irreparable harm.***[3]  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  The Court finds that Petitioner will be immediately and irreparably harmed by their continued deprivation of liberty without the bond hearing to which they are entitled to under section 1226(a).  "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013) (finding irreparable harm in the case of noncitizens' "needlessly" prolonged detention despite being entitled to bond hearings and potential conditional releases).

Here, Petitioner has been detained without a bond hearing for 40 days.  (*See* Application at 4 (noting Petitioner's arrest by immigration agents on September 28, 2025)).  Continued detention and deprivation of Petitioner's statutory rights under § 1226(a) holds significant potential for immediate and irreparable injury.  Accordingly, the Court finds this *Winters* factor met.

***Balance of equities and public interest.***  Finally, the balance of the equities and public interest analyses "merge when the government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong

---

[3] In their Opposition, Respondents do not dispute the presence of irreparable harm under these circumstances.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (quotations omitted). Moreover, the public's interest "in the efficient allocation of government's fiscal resources favors granting" the TRO here. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). With the "staggering" price to the public of immigration detention, *id.,* the public has a strong interest in ensuring its taxpayer dollars are not used for detention in obvious disregard of controlling federal law. *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) ("[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue.").

To the extent Respondents argue this TRO would "disrupt the status quo" (*see* Opp'n at 15), the Court reminds them that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021).[4] That principle applies here.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's Application and **ORDERS** as follows:

    1.    Respondents are enjoined from continuing to detain Petitioner unless he is provided with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order;

---

[4] Respondents do not raise an administrative exhaustion argument in their Opposition. Nevertheless, the Court agrees with Judge Snyder's analysis finding against exhaustion in the similar case of *Mosqueda v. Noem*. "Until such a decision [on the merits] is reached, and BIA no longer applies a policy that likely violates federal law, the circumstances do not present a need for requiring prudential exhaustion." *Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

3. Respondents shall show cause, in writing, as to why a preliminary injunction should not issue in this case by 12:00 p.m. on November 12, 2025. Petitioner may file a response no later than 12:00 p.m. on November 14, 2025;

4. A hearing on whether a preliminary injunction should issue is set for **November 14, 2025, at 2:00 p.m.**, via Zoom. Zoom information can be found on the Court's website.

5. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order on or before November 13, 2025. The joint status report shall also address whether the habeas petition is moot.

**IT IS SO ORDERED.**